**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES MOSS,

      Petitioner,                          Civil No. 2:14-CV-12272
                                       HONORABLE ARTHUR J. TARNOW
v.                                       UNITED STATES DISTRICT JUDGE

KATHLEEN OLSON,

      Respondent,
_____/

**OPINION AND ORDER CONDITIONALLY GRANTING**
**THE PETITION FOR WRIT OF HABEAS CORPUS**

James Moss, ("Petitioner"), presently confined at the Ojibway Correctional Facility in Marenisco, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1] In his *pro se* application, petitioner challenges his convictions for three counts of second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(b)(i); two counts of third-degree criminal sexual conduct, M.C.L.A. 750.520d(1)(b); one count of fourth-degree criminal sexual conduct, M.C.L.A.

---

[1] When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Cooper Street Correctional Facility, but has since been transferred to the Ojibway Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Therefore, the Court substitutes Warden Kathleen Olson in the caption.

*Moss v. Olson,* 2:14-CV-12272

750.520e(1)(b); and two counts of accosting a child for immoral purposes,

M.C.L.A. 750.145a.

This Court finds that petitioner was denied the effective assistance of trial

counsel when his attorney failed to call the complainants' grandmother to testify

that one of the complainants recanted her allegations against petitioner and for

failing to adequately cross-examine this same complainant.   Accordingly, the

petition for writ of habeas corpus is **CONDITIONALLY GRANTED.**

## I.  Background

Petitioner was convicted following a jury trial in the Washtenaw County

Circuit Court.   This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th

Cir. 2009):

> Between 2002 and 2008, defendant lived with his girlfriend, Tammy
> Tansey, and their young daughter, A, in a four-bedroom mobile home.
> Defendant's daughter, T, was 10 years old when she moved in with her
> father and Tansey.   A year later, Tansey's 11–year–old niece, K,
> moved into the home as well.  Shortly thereafter, Tansey's 17–year–old
> daughter, M, began to stay in the home periodically.
>
> K testified that when she was between the ages of 13 and 16 defendant
> repeatedly touched her in a sexual manner.  K indicated that defendant
> would jokingly steal her towel after her shower and "grab" her breasts.
> She further claimed that defendant grabbed her breasts while they were
> alone in defendant's truck and he was teaching her to drive.  K asserted

*Moss v. Olson,* 2:14-CV-12272

that defendant also bribed her to show him her breasts in exchange for cigarettes.

M similarly accused defendant of sexually touching her in the kitchen of the home.  M also claimed that defendant forcibly digitally penetrated her on one occasion and forced her into sexual intercourse on another. M admitted that she drank heavily during this period and often blacked out.  M claimed that defendant often provided her with alcohol.  She testified that she once awoke from an alcohol-induced slumber to find defendant performing oral sex on her and awoke on several other occasions when defendant forced penile-vaginal intercourse.

Neither K nor M reported these incidents until 2009, after they had left defendant's home.  T testified that she never witnessed any inappropriate contact between defendant and K or M.  Tansey also denied witnessing anything.  Tansey claimed that K denied that defendant had touched her when directly asked.  Tansey also claimed that M once taunted her that she and defendant were involved in a consensual sexual relationship but then told Tansey that she was lying.[2]

*People v. Moss*, No. 307893, 2013 WL 3023921, at *1 (Mich. Ct. App. June 18, 2013).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 495 Mich. 913,

840 N.W.2d 330 (2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was denied his right to the effective assistance of counsel where trial counsel:

---

[2]  Because the witnesses testified about incidents that occurred when they were minors, the Michigan Court of Appeals referred to them by their initials only. This Court will likewise refer to these witnesses in the same manner in order to protect their privacy.

*Moss v. Olson,* 2:14-CV-12272

A. Failed to effectively investigate the case against petitioner and failed to effectively cross-examine complainant M regarding her previous recantation and failed to call a witness who told the police that M had recanted her allegations.

B. Failed to effectively cross-examine M by impeaching her with inconsistent statements that she provided to the police and failed to highlight those inconsistencies with supporting documentary evidence.

C. Failed to make a motion for a directed verdict or motion notwithstanding the verdict where the prosecutor agreed that no evidence existed which supported a second count of accosting and soliciting a minor as it related to K.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme

*Moss v. Olson,* 2:14-CV-12272

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

Petitioner claims that he was denied the effective assistance of trial

counsel.

This Court reviewed the pleadings, the lower court record, and the

decision of the Michigan Court of Appeals.  The Court concludes that trial

counsel was ineffective for: (1) failing to call the victims' grandmother, Novella

Alliston, to testify that M recanted her allegations against petitioner, and (2)

failing to cross-examine M about several inconsistencies with her testimony.

To show that he was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test.  First,

the defendant must demonstrate that, considering all of the circumstances,

counsel's performance was so deficient that the attorney was not functioning as

*Moss v. Olson,* 2:14-CV-12272

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*,

466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

professional assistance. *Id.*  In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must

show that such performance prejudiced his defense. *Id.*  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in

*Strickland* places the burden on the defendant who raises a claim of ineffective

assistance of counsel, and not the state, to show a reasonable probability that

the result of the proceeding would have been different, but for counsel's

allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27

(2009).

Petitioner first contends that trial counsel was ineffective for failing to call

Novella Alliston, the victims' grandmother, to testify that M had recanted her

allegations against petitioner.

*Moss v. Olson,* 2:14-CV-12272

The Michigan Court of Appeals granted petitioner's motion for an evidentiary hearing with respect to this claim.  A *Ginther* hearing was conducted on petitioner's claim in the trial court. [3]

Trial counsel testified that at the time of the hearing he had practiced law for 43 years and "about half" of his practice in the past 20 years was criminal. Trial counsel received discovery from petitioner's first attorney and reviewed that discovery.  Trial counsel met with petitioner, who gave counsel the names of persons that he thought could support his defense.  Trial counsel contacted those individuals and interviewed them.  Trial counsel could not independently recall Alliston but he noted that the report in which her name appeared was in the file so he "must have seen it at some point." [4]  Trial counsel said that he did not interview Alliston or call her at trial, but did call petitioner's girlfriend Tansey and his daughter, T, to testify at trial. (Tr. 10/26/12, pp. 5-7, 11-17).  Trial counsel acknowledged at the *Ginther* hearing that although the substance of Alliston's testimony may have impeached M, he also indicated that whether the jury would believe Alliston was "another question." (*Id.,* pp. 11-12).

---

[3]  *People v. Ginther*, 390 Mich. 436; 212 N.W. 2d 922 (1973).

[4]  The police report in part stated that Alliston informed the police that M was spreading a rumor about petitioner sleeping with her.  Alliston confronted M in her house and pulled her into the back bedroom to speak with her about it. Alliston stated that M told her that these allegations were not true and that she had just made it up, saying:  "I would never do that Grandmother!!"

*Moss v. Olson,* 2:14-CV-12272

Novella Alliston testified that she met with a police officer about the case and informed the officer about her conversation with M, which was summarized in the police report.  Alliston also testified about the affidavit she signed for petitioner's appellate counsel. (*Id.,* pp. 22-26).  Alliston also mentioned a "second conversation" that she had with M that was not in the police report or in her affidavit.  Alliston said she never met petitioner's trial counsel. (*Id.*, pp. 26-28).

The trial judge ruled that she could not pass judgment on counsel's intentions with respect to Ms. Alliston because counsel testified he had no independent recollection of Alliston or her police report.  The judge concluded that counsel's failure to investigate and present Alliston as a witness was not prejudicial because M's testimony was supported by K's reports of sexual abuse and the jury heard M's previous inconsistent statements to Tansey.  The judge noted in passing that Alliston had a "hostile" relationship with M. (*Id.,* pp. 46-49).

The Michigan Court of Appeals rejected petitioner's claim:

> Alliston's testimony regarding M's recantation certainly would have strengthened defense counsel's attack on the victims' credibility.  Her absence did not deprive defendant of a substantial defense, however.  Counsel presented evidence that M recanted her accusation to Tansey and elicited witness testimony that generally painted the victims in a negative light.  On this record, we cannot discern a reasonable probability that Alliston's testimony would have swayed the jury.

*People v. Moss*, 2013 WL 3023921, at *3.

*Moss v. Olson,* 2:14-CV-12272

The state courts' rejection of petitioner's ineffective assistance of counsel claim was unreasonable for several reasons.

First, defense counsel performed deficiently in failing to speak with Ms. Alliston or call her as a witness.  A defense counsel's performance may be deemed deficient for failing to investigate and present possible defense witnesses. *See e.g. Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (counsel was deficient for failing to investigate a known and potentially important alibi witness); *Matthews v. Abramajtys,* 92 F.Supp.2d 615, 638 (E.D. Mich. 2000); *aff'd in part and rev'd in part on other grds,* 319 F.3d 780 (6th Cir. 2003)(trial counsel's failure to present alibi witnesses at petitioner's murder trial constituted deficient performance for purposes of ineffective assistance of counsel claim; witnesses volunteered to testify at trial and would have accounted for petitioner's whereabouts at time of murder); *Jemison v. Foltz*, 672 F. Supp. 1002, 1008 (E.D. Mich. 1987)(same).

Counsel was clearly deficient in failing to locate and speak with Ms. Alliston.  Without talking to Ms. Alliston, counsel was not in a position to determine whether she would be beneficial or not to petitioner's case.   "[W]here counsel fails to investigate and interview promising witnesses, and therefore 'ha[s] no reason to believe they would not be valuable in securing [defendant's] release', counsel's inaction constitutes negligence, not trial strategy." *Workman*

*Moss v. Olson,* 2:14-CV-12272

*v. Tate*, 957 F.2d 1339, 1345 (6th Cir. 1992)(internal citations omitted).

Moreover, given that Ms. Alliston could have provided corroborating evidence to

challenge M's credibillity, counsel's failure to attempt to contact her "remains

unexplained, if not inexplicable." *Bigelow v. Williams,* 367 F. 3d 562, 573 (6th Cir.

2004).

While the Michigan Court of Appeals was accurate that Petitioner was

able to present a defense, the defense was substantially weaker and undercut

without Ms. Alliston's testimony.

This Court further concludes that petitioner was prejudiced by counsel's

failure to call Ms. Alliston on his behalf, as this additional witness could have

bolstered Ms. Tansey's testimony that M recanted the sexual abuse allegations.

A criminal defendant is prejudiced by counsel's failure to call additional

witnesses to corroborate his defense. *See e.g. Stewart v. Wolfenbarger,* 468

F.3d 338, 357-60 (6th Cir. 2006)*; Bigelow,* 367 F. 3d at 575**;** *Clinkscale v. Carter*,

375 F.3d 430, 443 (6th Cir. 2004).  For example, the Sixth Circuit has rejected

the idea that additional alibi witnesses are merely cumulative and therefore

would not affect the outcome of the case. *Stewart,* 468 F. 3d at 358.

Morevoer, in deciding that petitioner was prejudiced by counsel's failure to

investigate and to call Ms. Alliston as an additional witness, the Court places

great emphasis on the weak evidence against petitioner in this case.  Neither

*Moss v. Olson,* 2:14-CV-12272

complainant reported the sexual abuse until 2009, after they had left petitioner's

home.  There was no medical evidence to corroborate the sexual abuse

allegations.  M admitted that she drank heavily when the alleged sexual abuse

was taking place and often blacked out.  Tansey and T both testified that they

never witnessed any inappropriate conduct between petitioner and either

complainant.   Tansey testified that K denied that petitioner touched her.  In light

of the problems with the complainants' credibility, this Court concludes that is a

sufficient probability that the verdict would have been different, which

undermines this Court's confidence in the verdict.  This is particularly so, in light

of the fact that Alliston would have been a more believable witness than Tansey,

whose credibility may have been undermined by the fact that she was

petitioner's girlfriend. *See e.g. Hodgson v. Warren*, 622 F.3d 591, 600 (6th Cir.

2010).

Finally, even though a finder of fact could have discredited Ms. Alliston

based on factors such as her potential hostility towards M, there certainly

remains a reasonable probability that a finder of fact would not have.

Petitioner's case was therefore prejudiced by counsel's failure to call an

additional witness who would have helped to corroborate his defense*. See

Ramonez v. Berghuis*, 490 F.3d 482, 491 (6th Cir. 2007).

*Moss v. Olson,* 2:14-CV-12272

This Court concludes that petitioner is entitled to the issuance of a writ of habeas corpus on this part of his ineffective assistance of counsel claim.

Petitioner next claims that counsel should have questioned M regarding inconsistencies between her police reports and her trial testimony.  M testified that she voluntarily reported petitioner's abuse to the police in Roscommon County after she permanently moved out.  The police reports, however, indicate that M's boyfriend actually reported the abuse and then the police contacted M. In the police reports, M indicated that the sexual assaults began in 2002 when she was 16 years old.  At trial, M testified that the events began in 2003 when she was 17 years old.

Counsel was clearly deficient in failing to confront M about these inconsistencies.  The failure to impeach the credibility of a key prosecution witness "with known false testimony is an egregious error in a criminal case." *Peoples v. Lafler*, 734 F.3d 503, 513 (6th Cir. 2013).  The failure to impeach M with the inconsistencies between her trial testimony and the police reports "could not have been a protected strategic decision when there is no conceivable way that this decision could help the defense." *Id.*  All counsel had to do was ask two more questions on cross-examination to completely undermine the credibility of M. *Id.*  Trial counsel's failure to use readily available evidence to impeach M's credibility "was well outside the range of professionally competent assistance,

*Moss v. Olson,* 2:14-CV-12272

and it so undermined the trial that it cannot be relied on as having produced a just result." *Id.* at 514.  Finally, petitioner was prejudiced by counsel's failure to adequately impeach M's credibility with these inconsistencies.  The case against petitioner depended almost entirely on the credibility of M and K, as there was no other evidence implicating him in these offenses.  Petitioner was prejudiced by counsel's failure to impeach M with these significant inconsistencies. *Id.* at 514-15.  Petitioner is entitled to a writ of habeas corpus on this claim.

Petitioner finally contends that trial counsel was ineffective for failing to move for a directed verdict with respect to one of the accosting a minor charges, noting that the prosecutor had mentioned, in response to a note by the jury, that K had not testified to a second accosting count.

The Michigan Court of Appeals rejected petitioner's claim, finding that K's testimony that petitioner offered K a cigarette on multiple occasions in exchange for her showing him her breasts supported a finding that petitioner was guilty of two counts of accosting a minor for immoral purposes. *Moss*, at * 6-7.

The United States Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975).  What is essential to

13

*Moss v. Olson,* 2:14-CV-12272

establish an element of a crime, like the question whether a given element is

necessary, is a question of state law, of which federal habeas review is not

available. *See Sanford v. Yukins,* 288 F.3d 855, 862 (6th Cir. 2002).  This Court

must defer to the Michigan Court of Appeals' determination that K's testimony

supported two counts of accosting a minor under Michigan law.  Because the

evidence was sufficient to prove that petitioner committed two counts of

accosting a minor for immoral purposes, counsel's failure to move for a directed

verdict did not amount to ineffective assistance of counsel. *Maupin v. Smith*, 785

F. 2d 135, 140 (6th Cir. 1986).

## IV.  ORDER

**IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR
WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE
STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN
NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A
WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY
FORTHWITH.**

                                        S/Arthur J. Tarnow
                                        Arthur J. Tarnow
                                        Senior United States District Judge
Dated: September 16, 2015

I hereby certify that a copy of the foregoing document was served upon parties/counsel of
record on September 16, 2015, by electronic and/or ordinary mail.

                                        S/Catherine A. Pickles
                                        Judicial Assistant